IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY BARNES, | : | |
|     Petitioner | : | |
| | : | |
| v. | : | CIVIL NO. 4:CV-05-CV-1456 |
| | : | |
| | : | (Judge Jones) |
| UNITED STATES IMMIGRATION | : | |
| AND CUSTOMS ENFORCEMENT, | : | |
|     Respondents | : | |

## **MEMORANDUM**

March 29, 2007

## **THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Jeffrey Barnes ("Barnes" or "Petitioner") a detainee of the Bureau of Immigration and Customs Enforcement ("ICE") presently confined at the Berks County Prison in Berks County, Pennsylvania,[1] filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[2] ICE is named as the Respondent.

---

[1] At the time of the filing of the Petition, Barnes was being held at the York County Prison in York, Pennsylvania.

[2] The Petition was initially filed in the United States District Court for the Eastern District of New York. On July 14, 2005, Judge Nicholas G. Garaufis entered an order transferring the portion of Barnes' Petition challenging his confinement in the York County Prison to this Court. The portion of Barnes' Petition challenging the validity of a final order of removal issued by the immigration judge on September 12, 2002 was transferred to the United States Court of Appeals for the Second Circuit.

1

It is undisputed that the Petitioner is a native and citizen of Jamaica. On August 5, 1981, the former Immigration and Naturalization Service ("INS")[3] admitted the Petitioner to the United States as a lawful permanent resident. (Rec. Doc. 1, Ex. 8 at p. 6). On January 17, 2002, the Petitioner was convicted in the Supreme Court of the State of New York, Queens County, of the offense of criminal possession of a controlled substance – to wit, cocaine – in the third degree, in violation of section 220.16 of the New York Penal Law. The conviction was pursuant to the Petitioner's guilty plea. The court sentenced Barnes to a term of imprisonment of one and one-half to four and one-half years. (Rec. Doc. 1, Ex. 8 at pp. 7-14).

On May 17, 2002, the INS initiated removal proceedings against the Petitioner by serving him with a notice to appear. In this charging document, the INS alleged that the Petitioner was deportable from the United States under subsections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act of 1952, as amended ("the Act"), 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i) (2000). ((Rec. Doc. 1, Ex. 8 at pp. 16-18).

In a decision dated September 12, 2002, the immigration judge found the

---

[3] On March 1, 2003, the INS was abolished and its functions were transferred to the Department of Justice to the Department of Homeland Security. ICE is the agency within the Department of Homeland Security that is responsible for the enforcement responsibilities previously entrusted to the INS.

Petitioner to be deportable as charged and ordered him removed from the United States.  Although the Petitioner reserved his right to file an appeal from the immigration judge's decision with the Board of Immigration Appeals ("BIA"), he did not file an appeal with the BIA.  (Rec. Doc. 1, Ex. 8 at pp. 20-21).  ICE took Barnes into custody on January 2, 2004, after he had finished serving his sentence in state prison. (Rec. Doc. 1, Ex. 8 at pp. 23-24).

On February 24, 2004, the Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania, in which he challenged the validity of his guilty plea in his criminal case.  See Barnes v. INS, 4:04-cv-00382.  On June 7, 2005, we transferred the case to the United States Court of Appeals for the Second Circuit pursuant to the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B. 119 Stat. 231 (May 11, 2005).[4]

On January 20, 2005, Barnes filed the instant Petition in the United States District Court for the Eastern District of New York, challenging the September 12,

---

[4] The REAL ID Act of 2005 became effective on May 11, 2005, and explicitly deprives district courts of jurisdiction to review administratively final orders of removal, whether in the context of a habeas petition or otherwise.  The Act further requires district courts to transfer to the court of appeals pending habeas corpus petitions that challenge such orders of removal.  Since Barnes' removal proceedings were completed before an immigration judge in Napanoch, New York, which lies within the territorial jurisdiction of the Second Circuit, the petition was properly transferred to the Court of Appeals for the Second Circuit.

2002 final order of removal and the lawfulness of his detention pending the resolution of that challenge.  On February 8, 2005, Judge Nicholas Garaufis entered an order staying the Petitioner's final order of removal. (Rec. Doc. 1, Ex. 1 at p. 2).

As of the writing of this Memorandum, the Petitioner has not been deported and remains detained by ICE at the Berks County Prison, pending the execution of his final order of removal.  On July 1, 2004, ICE conducted a post-order custody review for the Petitioner and issued a discretionary decision not to release him while his removal is stayed. (Rec. Doc. 1, Ex. 8 at pp. 50-51).

Therefore, the only matter for our remaining for our review is the portion of the Petition that challenges his continued detention by ICE pending the execution of his removal order.

**DISCUSSION**:

Section 241(a)(1)(B) of the Act addresses the custody of aliens who are subject to administratively final orders of removal.  See Immigration & Nationality Act § 241(a), 8 U.S.C. § 1231(a)(applying to the "Detention, Release, and Removal of Aliens Ordered Removed").  Under section 241(a), detention of an alien is authorized and mandatory during a ninety-day removal period.  Section 1231(a)(1)(B) provides:

> The removal period begins to run on the latest of the following:

> (i)   The date the order of removal becomes administratively final.
>
> (ii)   If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.  At the conclusion of the 90 day period, the alien may be held in continued detention, or may be released under continued supervision.  8 U.S.C. §§1231(a)(3) & (6).

If a judicial stay is granted, this removal period is extended., see 8 U.S.C. § 1231(a)(1)(C)("The removal period shall be extended beyond a period of 90 days and the alien *may* remain in detention . . . if the alien . . . acts to prevent the alien's removal subject to an order of removal")(emphasis added), and will begin anew after the "date of the court's final order" and the dissolution of the judicial stay. See 8 U.S.C. § 1231(a)(1)(B)(ii).  Pursuant to section 241(a)(1)(C), ICE may either detain or release the alien in its discretion if the removal period is extended beyond ninety days as a result of the granting of a judicial stay.

The Petitioner's constitutional challenge to his detention must fail.  The Petitioner's detention under section 241(a) of the Act is neither mandatory, indefinite, nor possibly permanent, and thus, it does not raise constitutional

concerns. The Petitioner has been denied release pending removal, as a matter of discretion, after ICE conducted an individualized review of his custody status in July 2004.

Section 241(a) provides the Attorney General with the discretionary authority to detain or release certain aliens subject to detention. Although section 241(a)(2) of the Act mandates the Attorney General to detain aliens during a ninety-day "removal period" following the issuance of an administratively final order of removal, see 8 U.S.C. § 1231(a)(1)-(2), an alien who has been granted a judicial stay of removal pending judicial review of his removal order is subject to an extended removal period, during which the Attorney General may release the alien in his discretion. See 8 U.S.C. § 1231(a)(1)(C). Accordingly, Barnes has been provided an individualized determination on his request for release pending the execution of his final removal order.

On July 1, 2004, ICE conducted an individualized review of Barnes' custody status and issued a discretionary decision to continue his detention. The Petitioner's detention is thus not mandatory. Nor is it indefinite or potentially permanent so as to raise constitutional concerns, as the Petitioner has not shown that ICE will be unable to repatriate him to Jamaica once he is no longer subject to a stay of removal.

The Petitioner's reliance on Zadvydas v. Davis, 533 U.S. 678 (2001) in support of his claim is without merit. In Zadvydas, the Supreme Court considered the application of section 241(a)(6) of the Act which allows for the detention of aliens after the conclusion of the removal period described in section 241(a)(1) to lawful permanent resident aliens who were deportable from the United states on account of their criminal convictions. See Zadvydas, 533 U.S. at 682. The Supreme Court determined that section 241(a)(6) does not constitute blanket permission for indefinite detention of such aliens beyond the removal period, and the Supreme Court thus read an implicit "reasonable time" limitation into the statute. See Zadvydas, 533 U.S. at 682, 701. Raising concerns about the constitutionality of a statute permitting indefinite detention of a deportable alien, the Zadvydas Court determined that the presumptive limit to a reasonable duration of detention after the removal period is six months. See Zadvydas, 533 U.S. at 689, 701. The Supreme Court held that where the INS is unable to remove an alien within a six-month period, the burden rests on the INS to present sufficient evidence to rebut an alien's showing that "there is no significant likelihood of removal in the reasonably foreseeable future." See Zadvydas, 533 U.S. at 701.

Zadvydas, which only addressed the possibility of indefinite detention beyond the removal period under section 241(a)(6) of the Act, does not apply in

the Petitioner's case.  The Petitioner is not subject to detention under section 241(a)(6) of the Act, but remains within the removal period, which has been extended because he has obtained a stay of his removal order.  See 8 U.S.C. § 1231(a)(1)(C), (2).  Because Petitioner's detention is neither indefinite, nor potentially permanent, the concerns raised by the Supreme Court in Zadvydas are not present in this case.

**CONCLUSION**:

The Petitioner remains in immigration detention because he asked for, and obtained, a stay of removal by our colleague in the Eastern District of New York. The Petitioner may not pursue a litigation strategy that extends his immigration detention and simultaneously argue that the prolongation of his detention violates the Constitution. Because the Petitioner's detention continues as a result of his efforts to avoid removal, he, in effect possesses "the key that unlocks" his prison cell." Doherty v. Thornburgh, 943 F.2d 204, 212 (2d. Cir. 1991).  Accordingly, for the foregoing reasons, we shall deny the instant Petition as it relates to Barnes' continued ICE detention. An appropriate Order shall issue.